O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| ROGER D. SILK,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>BARON BOND and HOWARD B. MILLER, in their capacity as Personal Representatives of the Estate of Frank Bond,<br><br>　　　　　　Defendants. | Case № 2:21-cv-03977-ODW (JPRx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [30]** |

## I.　INTRODUCTION

Plaintiff Roger Silk initiated this action against the representatives of the late Frank Bond's Estate seeking payment for tax and estate planning services Silk provided Bond during Bond's lifetime. (Compl. ¶ 1, ECF No. 1.) Defendants Baron Bond and Howard B. Miller are personal representatives of the estate of Frank Bond and move to dismiss for lack of subject matter jurisdiction and personal jurisdiction. (Mot. to Dismiss ("Mot."), ECF No. 30.) The matter is fully briefed. (Opp'n, ECF No. 36; Reply, ECF No. 37.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Silk worked exclusively for Frank Bond ("Decedent") between 1991 and 1995. (Compl. ¶ 18.) Throughout that time, Silk supervised and directed various aspects of Decedent's finances, particularly related to tax savings strategy. (*Id*. ¶¶ 18–19.) Silk alleges he and Decedent entered into a series of agreements whereby Silk's compensation would include a performance-based incentive fee of 15% on income-tax savings, annuity-tax savings, and savings Decedent's Estate would realize after his death. (*Id*. ¶ 19.)

Silk presents two written documents signed by himself and Decedent to support his claimed incentive fee, the "North Point" and "Westcliffe" agreements (the "Agreements"). (*Id.* Exs. 1–2 ("Agreements"), ECF Nos. 1-1, 1-2.) The North Point Agreement addresses Silk's incentive fee for Silk's tax planning in 1998 related to Decedent's interest in the North Point Shopping Center Limited Partnership. (*See id.* Ex. 1.) The North Point Agreement provides a step by step process for selecting an appraiser and calculating Silk's incentive fee based on the Estate's realized savings following Decedent's death. (*Id*.) Likewise, the Westcliffe Agreement addresses Silk's incentive fee for tax planning in 1999 related to the sale of Bond's Westcliffe, Warwick, and Harbond properties. (*See id.* Ex. 2.) The Westcliffe Agreement also specifies calculations for determining Silk's incentive fee based on the Estate's realized tax savings. (*Id*.) Additionally, although Silk submits no agreement in support, he also seeks a 15% incentive fee related to a private variable annuity Silk established for Decedent. (*Id*. ¶¶ 23–24.)

Now that Decedent has passed, Silk seeks the promised incentive fees. (*See id.* ¶¶ 29–31.) The Orphans' Court for Baltimore County, Maryland is currently overseeing probate of Decedent's Estate. (*Id*. ¶¶ 10, 32.) Defendants have filed a Notice of Disallowance against Silk's claim for these incentive fees in the probate court. (*Id.* ¶ 32, Ex. 3, ECF No. 1-3.)

Accordingly, Silk initiated this action asserting causes of action for breach of contract, unjust enrichment, and promissory estoppel. (*Id.* ¶¶ 33–62.) He seeks (1) judgment against Defendants; (2) an accounting sufficient to calculate the amounts due to Silk; (3) damages; (4) pre- and post-judgment interest; (5) attorneys' fees and costs; and (6) other relief as the Court deems just and proper. (Compl., Prayer for Relief.) Defendants now move to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (b)(2). (*See* Am. Notice of Mot. 2, ECF No. 30.)

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id*. (internal citations omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where a defendant brings a facial attack on the district court's subject-matter jurisdiction under Rule 12(b)(1), the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating that jurisdiction exists. *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## IV. DISCUSSION

Defendants argue the probate exception to federal jurisdiction bars Silk's action and this Court therefore lacks personal jurisdiction. (Mot. 2.) As the Court concludes it lacks subject matter jurisdiction in this case, it does not reach Defendants' arguments against personal jurisdiction.

The probate exception limits federal jurisdiction and "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). However, the probate exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id*. The Court in *Marshall* considered this rule "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id*. at 311. Therefore, "a federal court may adjudicate rights regarding property that is the subject of a probate proceeding so long as the relief sought would not require the federal court 'to assert control over property that remains under the control of the state courts.'" *Hollander v. Irrevocable Tr. Established by James Brown in Aug. 1, 2000*, No. CV 10-7249 PSG (AJWx), 2011 WL 2604821, at *2 (C.D. Cal. June 30, 2011) (quoting *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 107 (2d Cir. 2007)).

Silk maintains that the Complaint seeks a purely *in personam* judgment related to a contract dispute that does not fall within the probate exception. (Opp'n 7–8.) However, Silk's claims are not like the "common contract disputes" on which he relies. (*See id*.) For example, Silk cites *Cunningham v. World Savings Bank, FSB*, No. 3:07-cv-08033 JWS, 2007 WL 4181838 (D. Ariz. Nov. 21, 2007), but the contract dispute there concerned funds that were not in the control of the probate court. (Opp'n 8); *see Cunningham*, 2007 WL 4181838, at *4. In *Cunningham*, the plaintiff claimed the defendant-bank had wrongfully distributed the estate's funds to a third

party and therefore sued the bank to recover those funds, i.e., an *in personam* judgment against the bank. *Cunningham*, 2007 WL 4181838, at *4. The action did not require the court "to reach a *res* in the custody of a state court" so the probate exception did not apply. *Id.* Likewise, in *In re Kendricks*, 572 F. Supp. 2d 1194, 1199 (C.D. Cal. 2008), the dispute concerned a royalty contract's validity and whether the royalties were correctly paid to a third party rather than to the decedent's estate. Both cases sought the return of assets to the estate; neither disputed estate property under the control and custody of probate court.

In contrast, Silk's "contract dispute" turns on property currently in the control and custody of the probate court. Indeed, Silk acknowledged the probate court's jurisdiction by first filing his claim in the Baltimore County Orphans' Court. (*See* Compl. ¶ 32.) Nevertheless, Silk asks this Court to assume control over an estate appraisal and determine what portion of the Estate is due to him as an "incentive fee." (*See* Compl., Prayer for Relief; Agreements.) Silk's contract dispute cannot be resolved without first determining the value of the Estate. But the valuation of estate assets is within the province of the probate court and therefore precluded by the probate exception. *See Mich. Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 741 (11th Cir. 1982) (citing *Turton v. Turton*, 644 F.2d 344, 347 (5th Cir. 1981)). For this Court to take control of the appraisal would amount to the administration of Decedent's Estate—a right reserved to the state probate court. *Marshall*, 547 U.S. at 311–12; *see Markham v. Allen*, 326 U.S. 490, 494 (1946) (explaining that a federal court may not assume "control of the property in the custody of the state court").

Furthermore, Maryland estate and trust law closely regulates appraisals and provides that payment of "[a]n appraisal fee . . . is always subject to review by the court." Md. Code Ann., Est. & Trusts § 2-301(b)–(c). As the Agreements allegedly require the Estate to pay the cost of the appraisal, were the Court to order an appraisal as Silk requests, this Court would improperly interfere with the probate court's authority and dispose of estate assets in its control.

The Supreme Court expressly precluded federal courts from administering a decedent's estate and disposing of property in the custody of state probate courts. *Marshall*, 547 U.S. at 311–12. Accordingly, this Court lacks jurisdiction over Silk's claims in this case and must dismiss. In light of Silk's allegations and the Agreements, leave to amend would be futile and is therefore denied.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 30.) All dates and deadlines are vacated. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

October 26, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**